UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-163-FDW

| | |
|---|---|
| TITUS BATTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| BETTY BROWN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Betty Brown. (Doc. No. 30). For the following reasons, the Court grants the motion in part and denies the motion in part, and the Court will require further briefing from the parties.

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Titus Bates, a North Carolina state inmate currently incarcerated at New Hanover Correctional Center, filed this action on June 22, 2017, pursuant to 42 U.S.C. § 1983, alleging a violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified as 42 U.S.C. § 2000cc et seq.

Defendant filed the pending summary judgment motion on November 2, 2018. (Doc. No. 30). On November 5, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 33). Plaintiff responded to the summary judgment motion on

1

November 13, 2018, Defendant filed a Reply on November 20, 2018, and Plaintiff filed a Surreply on December 11, 2018. (Doc. Nos. 34, 35, 36). This matter is therefore ripe for disposition.

### B.     Factual Background

#### 1.     Plaintiff's Allegations

Plaintiff alleges in his Complaint that, while he was confined at Foothills, Defendant Betty Brown, as the North Carolina Department of Public Safety ("NCDPS") Director of Chaplaincy Services I, violated his religious rights under RLUIPA by refusing to allow him to be excluded from prison work duties on Fridays in observance of his membership in the Moorish Science Temple of America ("MSTA"). Plaintiff requests declaratory and injunctive relief and compensatory and punitive damages. (Id.)

#### 2.     Defendant's Summary Judgment Materials

Defendant's summary judgment materials include the pleadings and all attachments and the affidavit of Defendant Brown, with attached Exhibits A and B, the affidavit of Chaplain Swindell Edwards, with attached Exhibits A through E, and the affidavit of Chaplain Gary Lambert, with attached Exhibit A. (Doc. Nos. 32-1, 32-2, 35-1). These documents show the following events and circumstances:

As the Director of Chaplaincy Services, Defendant Brown's duties and responsibilities include formulating and providing professional supervision of chaplaincy services. Defendant Brown does not directly supervise chaplain or offenders in NCDPS prisons. (Doc. No. 32-1 at ¶ 3: Brown Aff.). She provides guidance and assistance for the religious activities to all the facilities within North Carolina prisons. (Id.). The Chaplaincy Services Central office staff provide technical support for the facilities' clinical chaplains or other designated staff. (Id.).

NCDPS provides written guidance to NCDPS administrators, chaplains, and other appropriate staff concerning religious practices and religious paraphernalia. (Id. at ¶ 5). NCDPS's Religious Practices Resource Guide and Reference Manual ("Manual") includes a list of faith practices officially recognized by NCDPS. This Manual also includes a brief description of the basic beliefs, authorized practices, worship procedures, and authorized religious items associated with each faith group. NCDPS recognizes the MSTA faith as an approved religion. (Id. at p. 9). The Manual provides that Friday is a Holy Day for adherents of the MSTA faith. (Id. at p. 10). The Manual further provides that "Moorish inmates may request to be released from assigned work and/or program assignments in order to observe" Friday as a Holy Day.[1] (Id. at p. 7).

With regard to religious services generally, NCDPS policy regarding religious services provides that "regular population inmates are allowed to attend any corporate worship service held at the facility" and "any offender may privately pray, meditate, and study scriptures or religious literature in his or her cell, so long as the offender does not interfere with other offenders, the offender's assigned program or work assignments, security or operational management." (Id. at pp. 16-17). The policy further provides that, for a facility to provide a religious corporate (group) worship service for a recognized faith group, a facility chaplain, approved community volunteer, or inmate faith helper must be available and at least six inmates must intend to regularly attend the service. (Id. at p. 17). The policy further provides that prisoners are "free to privately pray, meditate, and study scriptures or religious literature" in their

---

[1] The text of the Manual is confusing, as it expressly recognizes Friday as a Holy Day, but then also recognizes January 8 and January 15 as Holy Days and states that "Moorish inmates may request to be released from assigned work and/or program assignments in order to observe these two holidays." (Id. at 10).

3

cells. (Id.). Finally, inmates of the MSTA faith can submit an Inmate Request Form requesting to be released from assigned work and/or program assignments in order to observe Friday as a Holy Day. (Doc. No. 35-1 at ¶ 6).

Plaintiff identified MSTA as his religious preference since on or about February 10, 2009. (Doc. No. 32-2 at ¶ 7: Edwards Aff., Ex. B). Plaintiff was transferred from Tyrell Work Farm to Foothills on November 29, 2016, and then transferred from Foothills to New Hanover Correctional Center on November 7, 2017. On June 17, 2017, while Plaintiff was still at Foothills, Defendant Brown's office in Raleigh, North Carolina received a letter from Plaintiff that was forwarded to Swindell Edwards, Regional Chaplain for the Western Region, to provide a response to Plaintiff. (Doc. No. 32-2 at ¶ 8 & Ex. C; Doc. No. 32-1 at ¶ 8). Chaplain Edwards' August 16, 2017, letter shows that Plaintiff did not communicate his request for a MSTA corporate worship service to the chaplain at Foothills and that there were not enough inmates confined at Foothills at that time to meet the minimum number of inmates to satisfy the policy to permit a corporate worship service. (Id.).

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III.    DISCUSSION**

As noted, Plaintiff alleges a claim pursuant to RLUIPA, which provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their

5

religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

A substantial burden must be more than an inconvenience to an inmate's religious practice. Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007), abrogated on other grounds, Sossamon v. Texas, 563 U.S. 277 (2011). Prison policy that places restrictions on religious exercise more difficult, but which does not pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion, is not a substantial burden. See Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007); Dellinger v. Clarke, 172 F. Supp. 3d 898, 902-03 (W.D. Va. 2016) ("[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult, but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion.").

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling

6

governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

First, to the extent that Plaintiff purports to seek compensatory and punitive damages from Defendant, RLUIPA only authorizes injunctive relief against a state official, whether sued in his/her individual or official capacity. Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Moreover, Section 1983 claims against NCDPS officials and employees in their official capacities are barred by the Eleventh Amendment. Lytle v. Griffith, 240 F.3d 404 (4th Cir. 2001). Therefore, Plaintiff's only potential remedies under RLUIPA are equitable.

Defendant contends that because Plaintiff is no longer confined at Foothills his claim for injunctive relief is moot. However, there is evidence in the record regarding how Plaintiff's transfer has affected his ability to participate in MSTA worship. Moreover, there is no evidence before the Court as to the likelihood of Plaintiff being transferred back to Foothills. See Young v. Lane, 922 F.2d 370, 373-74 (7th Cir. 1991) (noting that the likelihood of being transferred back to an institution is a factual determination for the district court). Therefore, as to any injunctive relief Plaintiff may be seeking, the Court finds that this part of his claim may not be

moot. The Court does not presently, however, have enough facts before it to make this determination.

Defendant also contends in the summary judgment motion that Plaintiff has failed to identify what work assignment and/or educational class he was assigned to at the time, nor does he indicate that he actually had to be in a location on Fridays that precluded him from observing his MSTA faith. Defendant further contends that Plaintiff has failed to identify how he was pressured to violate his religious beliefs or abandon one of the precepts of his religion, beyond alleging that Friday is a "day of rest" for MSTA adherents, with no indications of what specific restrictions a "day or rest" implicates for MSTA adherents.

Defendant has presented an affidavit by Chaplain Lambert, a Chaplain at Foothills, stating that he reviewed Foothills' Chaplaincy Services records searching for any documents and/or correspondence related to the allegations in Plaintiff's Complaint. (Doc. No. 35-1 at ¶ 7). Lambert asserts in his affidavit that Plaintiff never asked Chaplain Lambert directly or submitted a request to chaplain staff at Foothills related to his concerns about having to work on Fridays because of his MSTA faith. (Id. at ¶ 8). Thus, Defendant contends that Plaintiff does not allege and cannot show that he was counseled or issued an infraction or any other disciplinary action for attending a religious service on Friday while confined at Foothills, nor that he was counseled and/or disciplined for not reporting to a work post while confined at Foothills. Defendant further notes that job assignments are voluntary. Defendant contends that summary judgment should, therefore, be granted in Defendant's favor on this basis.

This Court notes, however, that Plaintiff's grievance in this action, dated May 24, 2017, states that he had been working in the "laundry" since December 1, 2016, that the "laundry is going to start working on Friday," and he further asks in the grievance to "be off on Friday."

(Doc. No. 32-2 at 19). Therefore, it appears that Plaintiff was asking to be "off" on Fridays from his work in the "laundry." The Step One response to Plaintiff's grievance, dated May 25, 2017, states that "[t]he request to not work on Friday would be against NCDPS policy." (Id. at 20). The Step Two Response states, "Your grievance has been forwarded to my office for the step two response. To ensure policy compliance, I contacted Chaplain Swindell in Chaplaincy Services. According to the Religious Practices manual, it states private practitioners are required to pray daily. Under Corporate guidelines, one hour service on Friday, under the leadership of an approved outside volunteer or an inmate approved to service in the position of Action Grand Shiek, may be scheduled. However, the policy does not support taking a day off. No further action recommended." (Id. at 21). Therefore, while it appears that Foothills was willing to allow Plaintiff to attend an hour-long service on Fridays, it did not allow him to take work off on Fridays.

The prison's response to Plaintiff's grievance, stating that the prison's policy did "not support" Plaintiff being off work on a Friday, contradicts the NCDPS's own Religious Practices Resource Guide and Reference Manual, cited by Defendant in its supporting brief, and stating that Friday is a Holy Day for adherents of the MSTA faith. The Manual further provides that "Moorish inmates may request to be released from assigned work and/or program assignments in order to observe" Holy Days. (Doc. No. 32-1 at p. 7 of 18, Ex. A). According to Chaplain Lambert's own affidavit, the Manual states that inmates "confined at Foothills of the MSTA faith can submit an Inmate Request Form requesting to be released from assigned work and/or program assignments in order to observe Friday as a Holy Day." (Doc. No. 35-1 at ¶ 6). Although Plaintiff apparently did not submit a direct request to the chaplain through an Inmate Request Form, he did submit a grievance, requesting not to work on Fridays, and the request was

9

denied.

This Court hereby grants summary judgment to Defendant as to Plaintiff claim against Defendant for compensatory and punitive damages under RLUIPA. However, at this time, the Court will deny the summary judgment motion as to Plaintiff's claim for prospective injunctive relief in this matter. The Court will require further briefing from the parties on the apparent contradiction between the policy as described in the Religious Practices Resource Guide and Reference Manual, and the prison's response to Plaintiff's grievance. The Court further requires the parties to brief the issue of whether Plaintiff's claim for prospective injunctive relief is now moot, given his current circumstances at New Hanover Correctional Center.[2] The Court notes that there is some caselaw in other jurisdictions supporting Plaintiff's contention that denying time off from work on a Friday to a prisoner whose religious Holy Day falls on a Friday violates RLUIPA. See Troutman v. Miami Corr. Facility, No. 3:17cv409, 2017 WL 3676654, at *6 (N.D. Ind. Aug. 25, 2017); Henderson v. Ayers, 476 F. Supp. 2d 1168, 1173 (C.D. Calif. 2007).

The Court further encourages the parties to attempt to come to an amicable resolution in this matter that would preclude further litigation, particularly given that Plaintiff's only potential relief is equitable. That is, Plaintiff is not entitled to recover any money damages in this matter for any potential violation of RLUIPA. If the parties can resolve this matter as to Plaintiff's current situation, as to whether he is currently being allowed to adhere to his religious beliefs where he is now incarcerated, it would behoove the parties as well as this Court for this matter to

---

[2] As Defendant notes in its summary judgment motion, Plaintiff has apparently requested an approved MSTA Faith Helper at New Hanover Correctional Center, where he is currently incarcerated. (Doc. No. 32-2 at ¶ 9 & Ex. D; Doc. No. 32-1 at ¶ 9). If Plaintiff's current needs are now being met with regard to his religious adherence, then this matter may now be moot and subject to a voluntary dismissal by Plaintiff.

be concluded without further participation by this Court.

## IV. CONCLUSION

For the reasons stated herein, the summary judgment motion is granted in part and denied in part.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 30), is **GRANTED** in part and **DENIED** in part. Specifically, Defendant's summary judgment motion as to Plaintiff's claim for compensatory and punitive damages is **GRANTED**. Defendant's summary judgment motion as to prospective injunctive relief is **DENIED**.

2. The Court will require further briefing from the parties on the apparent contradiction between the policy as described in the Religious Practices Resource Guide and Reference Manual, and the prison's response to Plaintiff's grievance filed in this action. The Court also requires the parties to further brief the issue of whether Plaintiff's claim for injunctive relief is moot. Defendant therefore shall file a memorandum within 20 days, addressing these issues, after which Plaintiff shall have 20 more days in which to file his own memorandum.

Signed: January 10, 2019

Frank D. Whitney
Chief United States District Judge