# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-163-FDW

| | |
|---|---|
| TITUS BATTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| BETTY BROWN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court following additional briefing by the parties on the issue of whether Defendants are entitled to summary judgment on Plaintiff's claim for prospective injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified as 42 U.S.C. § 2000cc et seq. For the following reasons, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's claim for prospective, injunctive relief under the RLUIPA. Because this disposes of all remaining issues in this case, the case shall therefore be terminated.

### I.  BACKGROUND

Pro se Plaintiff Titus Bates, a North Carolina state inmate currently incarcerated at Carteret Correctional Center in Newport, North Carolina, filed this action on June 22, 2017, pursuant to 42 U.S.C. § 1983, alleging a violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified as 42 U.S.C. § 2000cc et seq. Plaintiff alleges in his Complaint that, while he was confined at Foothills Correctional Institution in Morganton, North Carolina, Defendant Betty Brown, as the North Carolina Department of Public

1

Safety ("NCDPS") Director of Chaplaincy Services I, violated his religious rights under the RLUIPA by refusing to allow him to be excluded from prison work duties on Fridays in observance of his membership in the Moorish Science Temple of America ("MSTA").

Defendant filed a summary judgment motion on November 2, 2018. (Doc. No. 30). On November 5, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 33). Plaintiff responded to the summary judgment motion on November 13, 2018, Defendant filed a Reply on November 20, 2018, and Plaintiff filed a Surreply on December 11, 2018. (Doc. Nos. 34, 35, 36).

On January 10, 2019, this Court granted summary judgment to Defendant on Plaintiff's damages claim under the RLUIPA, but the Court ordered Defendant to provide further briefing on Plaintiff's claim for prospective injunctive relief. (Doc. No. 37). On February 13, 2019, Defendant filed a supplemental memorandum, arguing that Plaintiff's claim for prospective injunctive relief is moot because he has been transferred away from Foothills. (Doc. No. 42). Defendant's summary judgment materials on the issue of prospective injunctive relief include an affidavit of David Lambert, with attached Exhibit A, an affidavit of Larry Williamson, and an affidavit of Tina Cameron, with attached exhibits, and Defendant also relies on the evidence submitted supporting the original summary judgment motion. (Doc. Nos. 43-1, 43-2, 43-3).

**II.     STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

As noted, Plaintiff alleges a claim pursuant to the RLUIPA, which provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,

3

unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under the RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

A substantial burden must be more than an inconvenience to an inmate's religious practice. Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007), abrogated on other grounds, Sossamon v. Texas, 563 U.S. 277 (2011). Prison policy that places restrictions on religious exercise more difficult, but which does not pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion, is not a substantial burden. See Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007); Dellinger v. Clarke, 172 F. Supp. 3d 898, 902-03 (W.D. Va. 2016) ("[n]o substantial burden occurs if the

government action merely makes the religious exercise more expensive or difficult, but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion.").

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. The "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under the RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

The Court noted, in its prior order granting Defendant's summary judgment in part, that the RLUIPA only authorizes injunctive relief against a state official, whether sued in his/her individual or official capacity. Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Moreover, Section 1983 claims against NCDPS officials and employees in their official capacities are barred by the Eleventh Amendment. Lytle v. Griffith, 240 F.3d 404 (4th Cir. 2001).

Thus, this Court has already granted summary judgment to Defendant as to Plaintiff claim against Defendant for compensatory and punitive damages under the RLUIPA. However, the Court denied the summary judgment motion as to Plaintiff's claim for prospective injunctive

relief, stating that the Court would require further briefing on the issue of whether Plaintiff's claim for prospective injunctive relief is now moot, given that he has been transferred away from Foothills Correctional Institution.[1]

In Defendant's responsive memorandum, Defendant states that Plaintiff was transferred from Foothills to New Hanover on November 7, 2017, to participate in a school program. Defendant states that Plaintiff never enrolled in school and should have been returned to Foothills, but now-retired Assistant Superintendent Hasberry approved Plaintiff to remain at New Hanover. Defendant also asserts that Plaintiff is currently projected to be released from NCDPS custody on or about June 28, 2019. Defendant states that if Plaintiff remains infraction-free it is very likely that he will not be transferred back to Foothills before his release from NCDPS custody. (Doc. No. 43-3 at ¶ 5, Ex. A: Cameron Aff.).

Defendant states that, in addition, according to the search of New Hanover's Assistant Superintendent of Programs I Tina Cameron at the time Plaintiff transferred to New Hanover on November 7, 2017, New Hanover held Friday holy day services. Further, as shown by Exhibit B attached to Cameron's affidavit, Plaintiff has been attending these services through February 2019. (Id. at ¶ 6, Ex. B). Further, Plaintiff is currently on Work Release at Corbett's Package Company beginning on January 28, 2019. Plaintiff is transported from the facility at approximately 12:30 am and returned to the facility between 9:30 - 10:00 am. Since the MSTA Friday services are held in the afternoon beginning at 2:00 pm, Plaintiff is confined in the facility at that time, and is afforded the opportunity to attend if he so chooses. (Id. at ¶ 10, Exs. B & D).

---

[1] The Court also required briefing from Defendant based on apparent contradiction between the policy as described in the Religious Practices Resource Guide and Reference Manual, and the prison's response to Plaintiff's grievance.

Plaintiff's only allegation in this matter is that Defendant Brown as the NCDPS Director of Chaplaincy Services violated his religious rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et. seq. by refusing to allow him to be excluded from prison work duties on Fridays in observance of his membership in the MSTA while he was confined at Foothills. This Court finds that Plaintiff's claim for prospective, injunctive relief has been rendered moot by his transfer away from Foothills. Moreover, Defendant asserts in the supplemental brief that since Plaintiff has been incarcerated at New Hanover, he has been able to attend MSTA Friday services at New Hanover while still being able to work at Corbett's Package Company on work release. In addition, Defendant has produced evidence satisfying the Court's finding that there is no reasonable likelihood that the Plaintiff will be transferred back to Foothills before his projected release from NCDPS custody on or about June 28, 2019; and thus, he is not likely to be subjected to the same alleged harm in the future. The Court further notes that, after Defendant filed the supplemental brief on February 13, 2019, Plaintiff was transferred to Carteret Correctional Institution in Newport, North Carolina, where he is now incarcerated. In sum, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's claim for prospective injunctive relief, as Plaintiff's claim has been rendered moot by this transfer away from Foothills, and where the record before this Court shows that Plaintiff has now been transferred to Carteret Correctional, and where he is also scheduled to be released from NCDPS custody on June 28, 2019.[2]

---

[2] Here, Plaintiff argues, in an affidavit submitted in response to Defendant's supplemental brief, that he is entitled to have the <u>entire</u> day on Fridays off in observance of his holy day. (Doc. No. 44). Given that Plaintiff has now been transferred yet again to a new prison, and because he is scheduled to be released from NCDPS custody in the next several months, his claim for prospective injunctive relief in this matter appears clearly to have been rendered moot. Moreover, the facts of this case do not support application of the very narrow exception to the

## IV. CONCLUSION

For the reasons stated herein, the summary judgment motion is granted as to Plaintiff's claim for prospective injunctive relief.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 30), is **GRANTED** in full. Specifically, Defendant's summary judgment motion as to prospective injunctive relief is **GRANTED**.

2. The Clerk is requested to dismiss and terminate this action.

Signed: April 2, 2019

Frank D. Whitney
Chief United States District Judge

---

mootness doctrine for cases "capable of repetition yet evading review." <u>Spencer v. Kemna</u>, 523 U.S. 1, 17 (1998).